(Hamilton County Probate Court.)

IN THE MATTER OF THE ASSIGNMENT OF LEO MERLING.

---

1. A chattel mortgage given by a failing debtor prior to his assignment to secure payment of an attorney's fees in connection with the assignment must be denied a preference.
2. An attorney who is employed to collect a claim may, without express authority so to do, make the affidavit required by section 4154 to a chattel mortgage securing the claim.
3. But where such an affidavit is made by an attorney prior to his employment to collect the claim, a subsequent ratification of his action by the mortgagee does not give validity thereto.

(Decided October, 1894.)

FERRIS, J.

Application has been made by he holders of certain chattel mortgages for the allowance of the same as preferences in the matter of this assignment, and proofs have been had tending to establish the validity of the debt as well as the observance of the formalities made necessary by the statute in the matter of recording the same.

The case at bar presents a state of facts not unusual, that makes it necessary to examine carefully the proofs that have been exhibited as well as the testimony. The proofs show that Leo Merling was engaged in the transaction of business at No. 174 Race street, in the city of Cincinnati, and while so engaged became embarrassed in business; that finding it necessary to make an assignment for the benefit of his creditors, he attempted to execute preferences in favor of his mother, Benardina Merling, to secure a note of $900, dated November 9, 1893; that on the same day he executed mortgages to Louis J. Dolle to secure a note of $300, one to B. H. Prues to secure a note for $300, dated October 14, 1893, and upon the ninth day of November, 1893, he executed a note for $95 to one Edward Wintersmith; and secured the same by giving a chattel mortgage. Upon the same day he also executed a note and mortgage of $116.25 to Caldwell, Antrim & Company and also executed and delivered to Simon Newell a note for $160, and secured the same by giving a chattel mortgage upon the stock and fixtures located at his place of business.

Considering the mortgages in the order in which they were filed, it appears from the testimony that the mortgage given to Louis J. Dolle, in the sum of $300, was to secure a note executed to him for that sum in payment of legal services, which were to be performed by him in matters relating to the assignment. Up to the date of the note the relation of attorney and client does not appear to have existed, and therefore no indebtedness could have arisen on this account, and in as much as under our statute the debt must be just, due and unpaid, this claim must be disallowed.

The authorities are clear in the conclusion that whatever services are rendered by counsel prior to the assignment, in matters relating to the assignment, are a debt against the assignor and can not be made a charge against a trust fund. The assignment for the benefit of the creditors of the estate was not complete until the deed of assignment was filed and the bond given, and whatever services counsel may render from and after that time, are a charge against the estate, which can only be paid out of the trust funds when the conditions set out in sec. 6357, Rev. Stat., have been fully complied with in the filing of a bill of items accompanied by an affidavit showing that the services were performed for the estate; that they were necessary to the assignment, and the amount charged therefor is reasonable, and not more than is usually paid for such services. And the court upon being satisfied of the correctness of the items and of a full compliance with this section of the statutes is authorized to charge the trust with the payment of it. In this way, counsel can be paid for whatever services are rendered on behalf of the estate, but the chattel mortgage must be denied a preference.

Coming next to consider the claim of Bernardina Merling, who seeks to establish a preference in the sum of $900, the court finds from the testimony that Bernardina Merling was a creditor at the time of the giving of the note in the sum set out in the same; that she had no conversation whatever with her counsel, who makes the affidavit required by sec. 4154, namely, that "the mortgagee, his agent or attorney, shall, before the instrument (chattel mortgage) is filed, state thereon, under oath, the amount of the claim, and that it is just and unpaid, if given to secure the payment of a sum of money only."

The chattel mortgage was executed by Leo Merling in favor of his mother, Bernardina Merling, to secure the payment of this indebtedness so found to be due. The son was instructed to secure any attorney to protect the interests of the mother. He retained one Fred. A. Lamping, a member of the bar, in that behalf. No instruction of any kind appears to have been given by Mrs. Merling to her counsel in reference to this chattel mortgage, and no express power certainly was given authorizing the taking of the security by way of chattel mortgage. The testimony of the attorney is to the effect that his employment was by the son; that he was instructed to take whatever steps should be necessary to secure the claim, and to that end was authorized to act as the agent of Bernardina Merling in all matters relating to the collection of this claim.

It is not contended by Bernardina Merling that the attorney was directed or employed to secure his claim. The owner of the present mortgage under discussion did not know the fact of her son's financial embarassment, nor indeed, was she aware of the manner in which her claim had been collected, but her instructions were to the effect that her interests should be protected. At the time this instruction was given, there was no written evidence of the existence of the debt, but the money, the court finds from the testimony, had been loaned in good faith, and the amount claimed was justly due to her, and was a *bona fide* indebtedness from her son for money had and received by him as a loan. Upon the faith that counsel had in the statement made by the son, representing the mother, and by the admissions of the son, who was the debtor, the affidavit that is required under section 4154 was made by counsel, without any personal knowledge on his part that any money was in fact due or owing, but relying implicitly upon the statement made by the representative of the mother that $900 were due to her, subscribed his name to the affidavit to comply with the provisions of section 4154.

And here issue is joined, and it is contended that under the provisions of this section an attorney is not authorized, under his general employment, to act as the agent or representative of his principal unless he is possessed of express authority, and has personal knowledge as to the amount of the claim, as to the justness of the same, and as to the fact that the same remains unpaid; but if the mortgage be given to indemnify the mortgagee against a liability as surety for the mortgagor, that such liability shall be shown, and that the attorney must have knowledge which enables him to swear that the same is taken in good faith to indemnify against a possible loss. And it is contended that the general power given to counsel is not sufficient to enable an attorney, in the absence of express power, to comply with the provisions of this section. This leads to the examination of the authorities upon this branch of the case.

Our Supreme Court has held in the case of *Ashley* v. *Wright*, 19 Ohio St., page 291, that a substantial compliance with the provisions of the statute only was required; that no formal solemnities were necessary, and that even though the certificate be irregular, the mortgage would be held good.

In the case of *Gardner* v. *Parmelee*, 31 Ohio St., page 551, Chief Justice WHITE, announcing the decision, says, with reference to this same section, that the statute does not prescribe a particular form in which the statement on the mortgage must be made. If the statement contains the requisite facts, the form in which they are stated is immaterial. And, referring to the mortgage on the affidavit, the court says that the mortgage and the affidavit are part and parcel of the same instrument: "The affidavit shows the nature and extent of the claim arising out of such liability, as well as upon the note held by him. Looking to the manifest object of the statute, it seems to us that its requirements have been in the present case

substantially complied with." And syllabus " 1 " states what I believe to be the law upon the subject, that the affidavit required by the statute to be entered on a chattel mortgage, need not be made in any particular form : " If the affidavit contains the requisite facts, the form in which they are stated is immaterial. Where the affidavit refers to matters contained in the mortgage, the matters thus referred to are to be regarded as a part of the affidavit."

And in the case that went up from this county, the case of the *Gambrinus Stock Co.* v. *Weber*, 41 Ohio St, page 69, the court held, with reference to the form of the chattel mortgage, where it appeared that the agent of the corporation had omitted to affix his name thereto, the other formalities having been observed, that the " verification is sufficient *prima facie,* and can only be overcome by evidence that the statement was not in fact sworn to by a proper agent of a corporation."

The court held, in the following language, that " we are of opinion that this faulty statement is sufficient *prima facie,* and that the mortgage is good as against subsequent judgmen creditors, unless they are able to show that the statement was not in fact verified by a proper agent of the company." The words of the statute requiring the mortgagee to place a verified statement on a chattel mortgage are as follows : " The mortgagee, his agent or attorney, shall, before the instrument is filed, state thereon under oath the amount of the claim, and that it is just and unpaid." The statement must be verified, and the court say, at page 690 : " The object sought to be attained is to give notice to the world of the condition of the mortgaged property. So, also, the object of the statute in requiring the mortgagee to enter a statement of the amount of his claim, verified before a proper officer, upon the chattel mortgage, before filing, is to notify the public of the amount of the lien, although defective, the statement in this case shows the amount of the debt secured by the mortgage, and when read in connection with the certificate of the notary public, shows that it was sworn to by the mortgagee. *   *   * And that it was a substantial compliance with the statute." And refers approvingly to the cases of *Ashley* v. *Wright,* and *Gardner* v. *Parmelee,* heretofore referred to.

If, therefore, under this decision it was *prima facie* proof that the party making the affidavit was the agent of the Gambrinus Stock Company, even though he did not subscribe to the affidavit, it would be *prima facie* evidence from the form of the affidavit in the case at bar, that Fred. A. Lamping was the attorney of Bernardina Merling. But we are not left by the testimony to struggle with presumptions.

The attorney, under oath, says that he was authorized to take whatever steps should be found necessary to collect the same ; that he considered his general employment to authorize him to act as attorney in compliance with the provisions of section 4154. The term "attorney" is much broader, the scope of the employment more far-reaching, and the obligations of a higher character than that of a mere agent. While the agent would be limited to such instructions as were given to him by his principal, the attorney would be bound to act according to the discretion which he himself would be justified in exercising. He stands exactly in the position of his principal, and when he ceases to represent the principal, represents nobody. The employment of an attorney carries with it full authority to do any and all legal things necessary to be done in relation to the matter for which the employment is had.

Bernardina Merling placed her claim in the hands of a lawyer. This carried with it full authority to do what was necessary in the matter of the collection of the claim. Being unable to collect the same, counsel acted in the right direction in securing it, and this, under the general power that is given to counsel to act as the attorney or representative, he had a right

to do.   I am therefore of the opinion that this mortgage, both in form and substance, is a substantial compliance with the law relating to the execution of chattel mortgages, and it is the first and best lien upon the fund now in the hands of the court for distribution.

Coming now to consider the claims of B. H. Prues, No. 2308D, dated November 9, 1893, filed at 11:14 o'clock, a. m.; Simon Newell, No. 2309D, dated November 9, 1893, filed at 11:15 o'clock, a. m.; Edward Wintersmith, No. 2310D, dated November 9, 1893, filed at 11:16, a. m., and of Caldwell, Antrim & Company, No. 2311D, dated November 9, 1893, filed at 11:17 o'clock, a. m., an examination of the mortgages discloses that they were all sworn to by an attorney whose employment does not from the testimony seem to have been made until after the execution of the mortgages, and from the testimony, the court is not able to find that any authority at all was given to the attorney to act as the representatives of these parties.   If the party making the affidavit was neither the mortgagee, his agent nor attorney, no compliance at all is had with the provision of this section herein frequently referred to, and the question arises as to whether or not subsequent ratification can cure a defect of this character.

I am of opinion, based upon the authorities, that ratification never covers an authority not already given in cases of this character.   While it is held that a substantial compliance is all that is necessary, no compliance whatever is not substantial compliance, and I do not find from the testimony any facts which show that the counsel in question was ever authorized by the parties whom he claimed to represent to act for them in the matter of the making of the chattel mortgages.   These chattel mortgages will, therefore, be denied any priority over general creditors.

*Frederick A. Lamping*, for mortgagees.

*Jerome D. Creed* and *William Creed*, for the unsecured creditors.